**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | |
|---|---|
| LAURA E. HAWKINS, individually and on behalf of others similarly situated, MANUEL MOTTA, CHARLOTTE HART (fka "Charlotte Goolsby"), ROBERT SLUMAN, JR., KELLY D. ISHAM, TROY LEE COLVIN, BRYANT STEPP, and CARL MORRISON II, | ) ) ) ) ) ) ) |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiffs | ) |
| | ) **COLLECTIVE ACTION** |
| | ) **COMPLAINT PURSUANT TO** |
| | ) **29 USC § 216(b)** |
| | ) |
| vs. | ) CAUSE NO. 3:14-cv-91-RLY-WGH |
| | ) |
| ONSITE OCCUPATIONAL HEALTH AND SAFETY INC., | ) ) |
| | ) |
| Defendant | ) |

**SETTLEMENT AGREEMENT**

This Settlement Agreement is made by and between plaintiffs Laura E. Hawkins, Manuel Motta, Charlotte Hart, Robert Sluman, Jr., Kelly D. Isham, Troy Lee Colvin, Bryant Stepp, and Carl Morrison, II on behalf of themselves and the Class (as hereinafter defined), **and** defendant Onsite Occupational Health & Safety, Inc.  This Agreement fully and finally compromises and settles any and all claims that were or could have been asserted in the lawsuit styled as *Hawkins et al. v. Onsite Occupational Health and Safety, Inc.*, Case No. 3:14-cv-91-RLY-WGH (S.D. Ind.) (the "Action") or arising from the employment of each Class Member (as hereinafter defined).

WHEREAS, on May 13, 2014, Laura E. Hawkins filed a class action lawsuit, styled as *Laura E. Hawkins et al. v. Onsite Occupational Health and Safety, Inc.*, Cause No. 26D01-1405-PL-000015 in the Gibson County Superior Court.

WHEREAS, on June 23, 2014, the Action was removed to the Southern District of Indiana and ultimately became styled as *Hawkins et al. v. Onsite Occupational Health and Safety, Inc.*, Case No. 3:14-cv-91-RLY-WGH.

WHEREAS, on March 16, 2015, Laura E. Hawkins, individually and on behalf of others similarly situated, filed an Amended Complaint in the Action under ecf. doc. no. 138 and contemporaneously therewith, a Motion for Class Certification under ecf. doc. no. 159.

WHEREAS, on May 5, 2015, Laura E. Hawkins, individually, and on behalf of others similarly situated, filed a Second Amended Complaint in the Action under ecf. doc. no. 194.

WHEREAS, the Parties (as hereinafter defined) engaged in extensive discovery and discovery motions over the course of the Action.

WHEREAS, the Parties engaged in two failed in-person mediation sessions, one with the Honorable Judge William G. Hussmann Jr., on May 14, 2015, and one with mediator Irv Sonne, on July 13, 2015, and the Parties engaged in additional subsequent settlement discussions.

WHEREAS, Class Counsel and the Defendant have conducted investigations relating to the claims and the underlying events and transactions alleged in the Action, have analyzed the evidence adduced during pretrial discovery, and have researched the applicable law, including that of the country of Afghanistan, with respect to Plaintiffs' claims against Defendants and the potential defenses thereto.

WHEREAS, Defendant paid the contested overtime wages consistent with Afghan law and the law of the United States of America, though Class Counsel and Hawkins dispute such determination.

WHEREAS, the Court has not yet ruled on Hawkins' Motion for Class Certification, so as of the date of this Settlement Agreement, no determination has been made as a matter of law as to whether any of the claims made in the Action is viable as a class action claim.

WHEREAS, the Court has not evaluated the merits of the Action, so there has been no determination as a matter of law as to whether Hawkins' allegations in her complaint, or those she makes on behalf of others, are valid.

WHEREAS, Defendant denies any wrongdoing, violation of any law, or failure to pay any owed wages, whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any defenses that the Defendants have asserted or would assert.

WHEREAS, the Parties have determined that a resolution of the Action is advisable from the point of view of all Parties.

WHEREAS, Defendant provided its financial records and Plaintiffs hired an independent Certified Public Accountant to independently investigate the current financial condition of the Defendant and the risks related to the potential enforcement of any judgment obtained in this action.

WHEREAS, based upon their investigation and pretrial discovery as set forth above, the Class Representatives and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate, and are in their best interests, and the Class Representatives have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement, after considering (a) the substantial benefits that Class Members will receive from a settlement of the Action, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the Settlement of this litigation to be consummated as provided by the terms of this Agreement.

WHEREAS, it is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1.      Definitions

As used in this Settlement Agreement, the following terms shall have the meanings indicated:

1.1     "Action" means the action captioned as *Hawkins et al. v. Onsite Occupational Health and Safety, Inc.*, Case No. 3:14-cv-91-RLY-WGH in the United States District Court for the Southern District of Indiana.

1.2     "Administrative Expenses" means all of the expenses incurred in the administration of this Settlement and Plan of Allocation, including, without limitation, all expenses or costs associated with providing notice to the Class, locating Class Members, determining the eligibility of any person to be a Class Member, and administering, calculating and distributing the Net Settlement Fund to Class Members. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.3     "Agreement" or "Settlement Agreement" means this Settlement Agreement.

1.4     "Class" means:

All named Plaintiffs (Laura E. Hawkins, Manuel Motta, Charlotte Hart, Robert Sluman, Jr., Kelly Isham, Troy Lee Colvin, Bryant Stepp, and Carl Morrison II), and present and former employees of Onsite OHS who work or worked for Onsite OHS at any time from May 13, 2011, to the present and who meet the following criteria:

Worked for Onsite OHS for some period of time in Afghanistan under the terms of a written contract governing the payment of wages.

1.5 "Class Counsel" means Robert Kondras of Hunt Hassler Kondras & Miller LLP.

1.6 "Class Member" means any person who is a member of the Class.

1.7 "Class Representatives" means Laura E. Hawkins, Manuel Motta, Charlotte Hart, Robert Sluman, Jr., Kelly Isham, Troy Lee Colvin, Bryant Stepp, and Carl Morrison II.

1.8 "Class Representatives' Case Contribution Compensation" means compensation approved by the Court, in an amount not to exceed $25,000, which shall be paid from the Settlement Fund to each Class Representative pursuant to Section 8.2 and according to the "Plan of Allocation" in recognition of his or her contributions to the litigation and for reimbursement of his or her expenses, if any, if approved by the Court.

1.9 "Complaint" means the Second Amended Complaint filed on May 5, 2015 under ecf. doc. no. 194.

1.10 "Court" means the United States District Court for the Southern District of Indiana.

1.11 "Defendant" or "Onsite" means Onsite Occupational Health & Safety, Inc.

1.12 "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 10 hereof.

1.13 "Escrow Agent" means Hunt, Hassler, Kondras & Miller LLP Trust Account.

1.14 "Escrow Account" means an interest-bearing account in a federally-insured financial institution established by Class Counsel using an Escrow Agent and escrow agreement that are acceptable to Defendant and under the supervision of the Court. Certain funds may be placed in a non-interest-bearing account during the check-clearing process.

1.15 "Final Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy and reasonableness of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure and to determine whether to issue the Final Settlement Approval Order and Judgment.

1.16    "Final" or "Finality," with respect to the Final Settlement Approval Order and Judgment means: (1) if no appeal is filed, the first business day after the last date on which any appeal from the Final Settlement Approval Order and Judgment can be timely filed or noticed under the corresponding rules of the applicable court or legislation for filing or noticing appeals; or (2) if there is an appeal from the Order, whether timely or untimely, the first business day after the later of the date on which (a) any appeal from the Final Settlement Approval Order and Judgment is finally dismissed, (b) if the Final Settlement Approval Order and Judgment is affirmed, a petition for a writ of *certiorari* or other form of review is denied or the time for filing such a petition expires, or (c) if *certiorari* or other form of review is granted, final affirmance of the Final Settlement Approval Order and Judgment following review pursuant to that grant is ordered.  Any proceeding or order, or any appeal or petition for a writ of *certiorari* or other form of review pertaining solely to any application for attorneys' fees, costs or expenses shall in any way delay or preclude the Final Settlement Approval Order and Judgment from becoming Final.

1.17    "Final Settlement Approval Order and Judgment" means an Order by the Court finally approving the Settlement and the terms of this Agreement, substantially in the form attached hereto as Exhibit B, and a Judgment dismissing with prejudice Defendant, substantially in the form attached hereto as Exhibit A.

1.18    "Gross Settlement Fund" means (1) the amount of the Settlement Amount and (2) any interest on or other income or gains earned while such amount is held by the Escrow Agent.

1.19    "Individual Initial Allocation Amount" means the portion of the Net Settlement Fund that the Settlement Administrator determines, pursuant to the terms of this Agreement and the Plan of Allocation, shall be allocated to each Class Member.

1.20    "Net Settlement Fund" has the meaning defined in Section 5.1 hereof.

1.21    "Notice" means the Notice of Proposed Settlement of Class Action, which is to be sent to Class Members substantially in the form attached hereto as Exhibit C-1.

1.22    "Party" or "Parties" means Laura E. Hawkins, Manuel Motta, Charlotte Hart, Robert Sluman, Jr., Kelly Isham, Troy Lee Colvin, Bryant Stepp, Carl Morrison II, the Class, and Onsite Occupational Health and Safety, Inc.

1.23    "Person" means an individual or legal entity or his, her or its respective successors or assigns.

1.24    "Plan of Allocation" means a plan of allocation of the Net Settlement

Fund as proposed by Class Counsel and approved by the Court.

1.25    "Plaintiff" or "Plaintiffs" means Laura E. Hawkins, Manuel Motta, Charlotte Hart, Robert Sluman, Jr., Kelly Isham, Troy Lee Colvin, Bryant Stepp, Carl Morrison II, and the Class.

1.26    "Preliminary Settlement Approval Order" means an order by the Court preliminarily approving this Agreement, including the forms and procedure for providing notice to the Class, establishing a procedure for Class Members to follow in order to object to the Settlement set forth in this Agreement, for approving the Plan of Allocation, and for setting a date for a hearing for final Settlement approval, substantially in the form attached as Exhibit C.

1.27    "Publication Notice" means the Summary Notice of Proposed Settlement and Hearing for publication, substantially in the form attached hereto as Exhibit C-2.

1.28    "Released Claim" means any claim, liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description, that Hawkins, the Class, and/or the Plaintiffs have, had, or may have against the Released Parties, whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, accrued or which may hereafter accrue, regardless of legal or equitable theory and the type of relief or damages claimed, based upon, arising out of, or related in any way to Onsite's employment of these individuals including but not limited to any claims that were or could have been asserted in the Action.  "Released Claim" does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

1.29    "Released Parties" means Kyle Johnson, Onsite Occupational Health & Safety, Inc., and Halfrack Holdings, Inc., and each of their past, present, and future successors, predecessors, parents, related organizations, subsidiaries, divisions, departments, or affiliates, and any of their past, present, and future officers, directors, stockholders, partners, agents, attorneys, servants, subrogees, insurers, employees, representatives, assigns, consultants, principals, and advisors.

1.30    "Settlement" means the settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.31    "Settlement Amount" means Three Hundred Two Thousand Dollars ($302,000.00) that Defendant shall pay into the Escrow Account pursuant

to the terms of this Agreement.

1.32    "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, (A) with respect to the income or gains earned by or in respect of the Gross Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendants or their counsel with respect to any income or gains earned by or in respect of the Gross Settlement Fund for any period while it is held by the Escrow Agent during which the Gross Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax purposes; or (B) by way of withholding as required by applicable law on any distribution by the Escrow Agent or the Settlement Administrator of any portion of the Gross Settlement Fund to Class Members and other persons entitled hereto pursuant to this Agreement; and (ii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Gross Settlement Fund (including without limitation, expenses of tax attorneys and accountants). For the purposes of (A) in this paragraph taxes imposed on Defendants shall include amounts equivalent to taxes that would be payable by Defendants but for the existence of relief from taxes by virtue of loss carry forwards or other tax attributes, determined by Defendants, acting reasonably, and accepted by the Escrow Agent, acting reasonably.

1.33    "Unknown Claims" means any and all Released Claims that any of the Plaintiffs does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her or it, might have affected his, her or its decisions with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs
shall have waived any and all provisions, rights and benefits conferred by any law of any state of the United States, the country of Afghanistan, or principle of common law or otherwise.

Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement.

2.    Agreement for Settlement Purposes Only

2.1    This Agreement is for settlement purposes only, and to the fullest extent permitted by law, neither the fact of, nor any provision contained in this Agreement, nor any actions taken hereunder, shall constitute, be construed as, be used as, or be admissible in evidence as, an admission of the validity of any claim or any fact alleged by Plaintiffs in the Action or in any other pending or subsequently filed action, or as an admission of any wrongdoing, fault, violation of laws, or liability of any kind on the part of Defendants, or

admission by any of the Parties of the validity, or lack thereof, of any claim, allegation or defense asserted in this action or any other action.

2.2     Class Representatives, Defendant, and their respective counsel shall limit public comments regarding the terms of the Settlement to disclosure of such information as is necessary to implement this Agreement, except that they may issue press releases in connection with the filing of the motion for preliminary approval of this Settlement.  Notwithstanding the foregoing, the Class Representatives, Defendants, and their respective counsel also may disclose additional information about the Settlement as necessary (a) to accountants, insurers, regulators, analysts, investors, customers, brokers, and Class Members and (b) to comply with federal and state law disclosure requirements or any other requirement of law.

3.     Representations

3.1     Each Party represents that (i) such Party has full legal right, power and authority to enter into and perform this Agreement, subject to Court approval, (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party, (iii) this Agreement constitutes a valid, binding and enforceable agreement, and (iv) such Party has not assigned any of the claims referred to herein to any other person or entity, and no consent or approval of any other person or entity is necessary for such Party to enter into this Agreement.

4.     Settlement Consideration

4.1     In consideration for the release and discharge provided herein, the Defendant shall pay the Settlement Amount into the Escrow Account.

4.2     The Defendant shall deposit the Settlement Amount into the Escrow Account within ten (10) business days after the date on which the Preliminary Settlement Approval Order is entered by the Court. Defendant shall have no obligation to pay any amount other than the Settlement Amount in connection with this Settlement, including but not limited to Plaintiffs' attorneys' fees and expenses, Administrative Expenses, claim expenses, notice expenses, mailing or postage, regardless of whether or not such amounts are payable out of the Gross Settlement Fund.

4.3     In the event the Court does not issue a Final Settlement Approval Order and Judgment or if the Final Settlement Approval Order and Judgment is overturned on appeal, all of the funds in the Escrow Account not previously spent or committed pursuant to Sections 6.2, shall be returned to the Defendant, including interest earned thereon.

5.      Settlement Fund Investment and Taxes

5.1     The Gross Settlement Fund shall be used to pay (i) the Notice, Publication
        Notice and other Administrative Expenses referred to in Section 1.2 hereof;
        and (ii) the attorneys' fee and expense award and the Class
        Representatives' Case Contribution Compensation referred to in Sections
        8.1 and 8.2 hereof.  The balance of the Gross Settlement Fund (inclusive of
        interest earned) after the matters described in clauses (i) and (ii) of this
        paragraph and after the payment of any Taxes (as defined herein) shall be
        the Net Settlement Fund.  All funds held by the Escrow Agent shall be
        deemed to be in the custody of the Court until such
        time as the funds shall be distributed to the Class Members or otherwise
        disbursed pursuant to the Plan of Allocation to be proposed by Class
        Counsel and approved by the Court, and/or further order of the Court.  No
        distributions shall be made from the Net Settlement Fund except in
        compliance with the provisions of Section
        9 hereof and the Plan of Allocation, as approved by the Court.

5.2     No amounts may be withdrawn from the Escrow Account unless (a)
        expressly authorized by the Plan of Allocation or (b) approved by the
        Court.

5.3     The Escrow Agent shall invest the funds only in accounts or instruments
        that Plaintiffs believe in good faith will not lose value of principal.

5.4     The Parties hereto agree that the Gross Settlement Fund is intended to be a
        Qualified Settlement Fund within the meaning of Treasury Regulation §
        1.468B-1, and that the Escrow Agent as administrator of the Gross Settlement
        Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be
        responsible, with the assistance of the Settlement Administrator, for filing tax
        returns and any other tax reporting for or in respect of the Gross Settlement
        Fund and paying from the Gross Settlement Fund any Taxes owed with respect
        to the Gross Settlement Fund.  The Parties hereto agree that the Gross
        Settlement Fund shall be treated as a Qualified Settlement Fund from the
        earliest date possible, and agree to any relation-back election required to treat
        the Gross Settlement Fund as a Qualified Settlement Fund from the earliest
        date possible.

5.5     All Taxes shall be paid out of the Gross Settlement Fund, shall be
        considered to be a cost of administration of the Settlement and shall be
        timely paid by the Escrow Agent without prior Order of the Court.  The
        Gross Settlement Fund or the Escrow Agent shall, to the extent required by
        law, be obligated to withhold from any distributions to Class Members and
        other persons entitled thereto pursuant to this Agreement any funds
        necessary to pay Taxes including the establishment of adequate reserves for
        Taxes as well as any amount that may be required to be withheld under
        Treasury Reg. § 1.468B-(1)(2) or otherwise under applicable law in respect

of such distributions. Further, the Gross Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

5.6     The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to the Plan of Allocation or derived from or made pursuant to the Settlement Fund.

5.7     Each Class Representative and Class Member shall be solely responsible for the federal, state and local tax consequences to him, her or it of the receipt of funds from the Net Settlement Fund pursuant to the Plan Allocation and, if applicable, the Class Representatives' Case Contribution Compensation.

5.8     The Defendant and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel or the Escrow Agent, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii) the formulation, design or terms of the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.

5.9     The Class Representatives and Class Counsel shall not have any responsibility for or liability whatsoever with respect to:  (i) any act, omission or determination of the Escrow Agent or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii) the formulation, design or terms of the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.

6.     The Escrow Agent

6.1     The Escrow Agent, acting solely in its capacity as Escrow Agent, shall be subject to the jurisdiction of the Court.

6.2     Class Counsel may pay from the Gross Settlement Fund deposited in the Escrow Account actual reasonable Administration Expenses without further order of the Court. In the event that the Settlement does not become finally effective, money paid or incurred for Administrative Expenses shall not be returned or repaid to the Defendant.

6.3     The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this Agreement, and shall not be liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it, consistent with the terms hereof and those of any escrow agreement concerning the Gross Settlement Fund, in connection with the performance by it of its duties pursuant to the provisions of this Agreement or order of the courts, except for its gross negligence or willful misconduct. In the event the Settlement is terminated, as provided for herein, indemnified amounts and expenses incurred by the Escrow Agent in connection with this paragraph shall not be returned to the Defendants.

7.     Class Notice and Settlement Hearing

7.1     Promptly upon the execution of this Agreement, Class Counsel will file a motion for preliminary approval of the Settlement with the Court.

7.2     Class Counsel shall apply to the Court for entry of a Preliminary Settlement Approval Order, substantially in the form annexed hereto as Exhibit C.  Such Order shall include approval for the mailing of a Notice and Publication Notice, substantially in the form of Exhibits C-1 and C-2 attached hereto.

7.3     The mailing of the Notice and publication of the Publication Notice shall not occur until after the Court enters the Preliminary Settlement Approval Order.

7.4     The Settlement Administrator is responsible for mailing of the Notice and publication of the Publication Notice.

7.5     Class Counsel is responsible for contacting all Class Members.  Defendant has no responsibility or liability relating to the identification of Class Members.

7.6     Class Members shall have 60 calendar days after the mailing of the Notice to file objections to the Settlement with the Court.

7.7     Class Counsel shall request that, after Class Notice is given, the Court

hold a hearing and enter a Final Settlement Approval Order and Judgment for the litigation.

7.8    Defendants will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

8.    Attorneys' Fees and Expenses

8.1    Class Counsel will apply to the Court for an award of attorneys' fees, not to exceed one-third (33 1/3%) of the Gross Settlement Fund, and reimbursement of expenses payable from the Gross Settlement Fund and shall further provide to the Court, as part of the motion for approval of the Settlement, all necessary information required by the Court concerning the total award of attorneys' fees and reimbursement of expenses. Such application shall be made prior to the deadline for objections to the Settlement and in accordance with such schedule as the Court may establish. Defendants will take no position with respect to any applications for attorneys' fees or expenses, or Class Representative Case Contribution Compensation.

8.2    Class Counsel may also apply to the Court for Class Representatives' Case Contribution Compensation for Class Representatives in an amount not to exceed $25,000 per Class Representative.

8.3    Upon or after the Effective Date, any attorneys' fees and expenses and Class Representatives' Case Contribution Compensation approved by the Court shall be paid from the Gross Settlement Fund.

9.    Supervision and Distribution of Settlement Fund

9.1    Subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, Class Counsel shall administer and/or oversee allocation of the Net Settlement Fund to the Class Members.

9.2    The Gross Settlement Fund shall be applied as follows:

(a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing Notice to the Class (including mailing of Notice and publication of Publication Notice), locating Class Members, determining the eligibility of any person to be a Class Member, administering, calculating and distributing the Net Settlement Fund to Class Members, paying reasonable escrow fees and costs, if any;

(b)    to pay the attorneys' fees and expenses awarded to Class Counsel by the Court, and to pay Class Representatives' Case Contribution Compensation as approved by the Court;

(c)     to pay the Taxes, as described in Sections 1.33, 5.4, and 5.5 hereof; and

(d)     to distribute the Net Settlement Fund to Class Members in accordance with the terms of the Plan of Allocation as approved by the Court and the Court's orders.

9.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Plan of Allocation as approved by the Court or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members, subject to and in accordance with this Agreement.

9.4     Class Counsel shall prepare a Plan of Allocation to be presented to the Court with its application for entry of the Preliminary Settlement Approval Order.

9.5     Class Counsel and the Settlement Administrator are responsible for ensuring that the Net Settlement Fund is distributed to Class Members in accordance with the Court-approved Plan of Allocation. Class Counsel and the Settlement Administrator also are responsible for communicating with Class Members and others regarding Individual Initial Allocation Amounts and amounts paid under the Settlement. Defendants have no responsibility or liability relating to the allocation of the Net Settlement Fund among Class Members and shall have no obligation to communicate with Class Members and others regarding Individual Initial Allocation Amounts and amounts paid under the Settlement.

9.6     No person shall have any claim against Class Counsel or the Class Representatives based on distributions made substantially in accordance with the Court-approved Plan of Allocation or further order(s) of the Court. No person shall have any claim whatsoever against Defendant or Defendants' counsel, arising from or related to any allocations or calculations thereof to any Class Member or distributions made, or not made, from the Gross or Net Settlement Fund.

10.     Effective Date of the Settlement

10.1     The Effective Date of the Settlement shall be the date on which all of the following conditions of settlement shall have occurred:

(a)     entry by the Court of the Preliminary Settlement Approval Order, substantially in the form attached as Exhibit C;

(b)     payment of the Settlement Amount into the Escrow Account;

(c)     approval by the Court of the Settlement, following Notice, substantially in the form attached as Exhibits C-1 and C-2, to the

Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(d)     entry by the Court of the Final Settlement Approval Order and Judgment substantially in the form attached as Exhibits A and B and such Order and Judgment becoming Final.

10.2     Unless otherwise ordered by the Court, in the event this Agreement shall terminate, be cancelled or not become effective for any reason, within ten (10) business days after written notification of such event is sent by counsel for Defendants to the Escrow Agent, the Escrow Agent shall pay to Defendants an amount equal to the Settlement Amount together with any interest or other income earned thereon, less any Taxes paid or due with respect to such income, less any amounts required to be paid to the Escrow Agent pursuant to the relevant Escrow Agreement, and less any reasonable Administrative Expenses actually incurred and paid or payable from the Gross Settlement Fund, as authorized in this Agreement.

10.3     Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related Orders had not been entered.

11.     Release

11.1     As of the Effective Date of the Settlement, Plaintiffs will absolutely and unconditionally release and discharge any and all Released Claims against any and all Released Parties, but such release shall become null and void if the Settlement does not become Final for any reason.

11.2     The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts, and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief and knowledge and that each Party does not rely on inducements, promises or representations made by anyone other than those embodied herein.

11.3     Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

11.4   As of the Effective Date of the Settlement, Defendant will absolutely and unconditionally release and discharge each of the Class Representatives and their counsel and each of their experts from any and all claims and all liabilities of any kind (including any and all attorneys' fees and other costs incurred in defending against such claims), relating to the institution and prosecution and settlement of the Action and any claims made therein, but such release shall become null and void if the Settlement does not become Final for any reason.  This release does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

12.   No Admission of Wrongdoing

12.1   This Agreement, whether or not consummated, and any proceedings taken pursuant to it:

(a)   shall not be offered or received against any Defendant or Released Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

(b)   shall not be offered or received against any Defendant or Released Party as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

(c)   shall not be offered or received against any Defendant or Released Party as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder; and

(d)   shall not be construed against any Defendant or Released Party

as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial.

13.  Miscellaneous Provisions

13.1  Further Steps.  The Parties agree that they each shall undertake any required steps to effectuate the purposes and intent of this Agreement.

13.2  Representation by Counsel.  The Class Representatives and Defendants represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

13.3  Contractual Agreement.  The Parties understand and agree that all terms of this Agreement are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

13.4  Integration.  This Agreement constitutes the entire agreement among the Parties, and no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized herein.

13.5  Incorporation by Reference.  All of the exhibits attached hereto are incorporated by reference as though fully set forth herein.

13.6  Drafting.  The Parties agree that no single Party shall be deemed to have drafted this Settlement Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys.

13.7  Modification or Amendment. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Persons who executed this Agreement or their successors-in-interest.

13.8  Waiver. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.  In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other

prior or subsequent breach of this Agreement.

13.9    Severability.  Should any part, term or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the court may modify such provision to the extent necessary to make it valid,
legal and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

13.10   Successors.  This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

13.11   Survival.  The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

13.12   Governing Law.  All terms and conditions of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Indiana, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

13.13   Interpretation.

(a)    Definitions apply to the singular and plural forms of each term defined.

(b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

(c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

13.14   No Precedential Value.  The Parties agree and acknowledge that this Agreement carries no precedential value.

13.15   Fair and Reasonable Compromise.  The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arms-length negotiations.

13.16   Retention of Jurisdiction.  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

13.17   Headings.  Any headings contained herein are for informational purposes

only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

13.18   Exhibits.  The Exhibits to this Agreement are expressly incorporated and made part of the terms and conditions set forth herein.

13.19   Counterparts. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

13.20   Facsimile and Electronic Mail.  Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

13.21   No Assignment.  Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any claims, causes of action or demands which were or could have been, or ever could be asserted against any Party and that are released in this Agreement, or which were, could have been, or ever could be asserted against any Party.  Any Party that breaches the representations and warranties set forth in this Paragraph shall indemnify and hold harmless each other Party, its parents, subsidiaries and affiliates, and their respective agents, attorneys, successors, heirs, assigns, administrators, officers, directors, employees and all other persons acting in concert with them from any and every claim or demand of every kind or character arising out of a breach by any such breaching Party of its representations and warranties in this Paragraph.

13.22   Non-Disparagement.  The Class Representatives, and their respective counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of the Parties, the Released Parties and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel; provided, however, nothing herein shall preclude any Party, its agents, its representatives or its counsel from any good faith response to any inquiries under oath or in response to a governmental inquiry or from making statements in the course of legal proceedings, or from non-public privileged communications with Class Members with regard to the Settlement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by

ONSITE OCCUPATIONAL HEALTH & SAFETY, INC.

By:
Kyle Johnson, President & CEO

HALFRACK HOLDINGS, INC.

By:
Kyle Johnson, President & CEO

KYLE JOHNSON

By:
Kyle Johnson

ONSITE OCCUPATIONAL HEALTH & SAFETY, INC.

By:
Christopher D. Lee or Crystal S. Wildeman

HALFRACK HOLDINGS, INC.

By:
Christopher D. Lee or Crystal S. Wildeman

KYLE JOHNSON

By:
Christopher D. Lee or Crystal S. Wildeman

LAURA E. HAWKINS, ON BEHALF OF HERSELF AND THE CLASS

By:
Laura Hawkins

MANUEL MOTTA, ON BEHALF OF HIMSELF AND THE CLASS

By:
Manuel Motta

CHARLOTTE HART F/K/A CHARLOTTE GOOLSBY, ON BEHALF OF HERSELF AND THE CLASS

By:

19

KELLY D. ISHAM, ON BEHALF OF HIMSELF AND THE CLASS

By: _____
Kelly D. Isham

TROY LEE COLVIN, ON BEHALF OF HIMSELF AND THE CLASS

By: _____
Troy Lee Colvin

BRYANT STEPP, ON BEHALF OF HIMSELF AND THE CLASS

By: _____
Bryant Stepp

CARL MORRISION II, ON BEHALF OF HIMSELF AND THE CLASS

By: _____
Carl Morrison II

ROBERT SLUMAN, JR., ON BEHALF OF HIMSELF AND THE CLASS

By: _____
Robert Sluman, Jr.

CLASS COUNSEL, ON BEHALF OF THE CLASS

By: _____
Robert P. Kondras Jr., Class Counsel

By: _____
Jacob H. Miller, Class Counsel

By: _____

Robert F. Hunt, Class Counsel

20

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | |
|---|---|
| LAURA E. HAWKINS, individually and on behalf of others similarly situated, MANUEL MOTTA, CHARLOTTE HART (fka "Charlotte Goolsby"), ROBERT SLUMAN, JR., KELLY D. ISHAM, TROY LEE COLVIN, BRYANT STEPP, and CARL MORRISON II, | ) ) ) ) ) ) ) |
| Plaintiffs | ) ) **CLASS ACTION COMPLAINT** ) |
| | ) **COLLECTIVE ACTION** ) **COMPLAINT PURSUANT TO** ) **29 USC § 216(b)** ) |
| vs. | ) CAUSE NO. 3:14-cv-91-RLY-WGH ) |
| ONSITE OCCUPATIONAL HEALTH AND SAFETY INC., | ) ) ) |
| Defendant | ) |

**JUDGMENT DISMISSING WITH PREJUDICE DEFENDANTS ONSITE
OCCUPATIONAL HEALTH AND SAFETY INC.**

In accordance with, and for the reasons set forth in the Final Settlement Approval Order

entered on _____, 2016, all claims against Onsite Occupational Health and Safety Inc.

and its parents, subsidiaries, affiliates, predecessors, and successors are dismissed with prejudice as

to the Class Representatives and as to all Class Members pursuant to Rule 54(b) of the Federal Rules

of Civil Procedure.

Dated: _____          _____
                                     Hon. Richard L. Young
                                     United States District Court Judge
                                     United States District Court
                                     Southern District of Indiana